IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DINKINS, ANNETTE WEST and KEVIN LEWIS, on behalf of themselves and all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 3:14-cv-1463 |
| YP ADVERTISING, LP (f/k/a AT&T ADVERTISING SOLUTIONS) and YP TEXAS REGION YELLOW PAGES, LLC | § § § § | |
| Defendants. | § § § | |

## ORIGINAL COMPLAINT – CLASS ACTION

Plaintiffs, CHRISTOPHER DINKINS ("Dinkins"), ANNETTE WEST ("West") and KEVIN LEWIS ("Lewis"), on behalf of themselves and all others similarly situated, file this Original Complaint against YP ADVERTISING, LP (f/k/a AT&T ADVERTISING SOLUTIONS) ("YP Advertising") and YP TEXAS REGION YELLOW PAGES, LLC ("YP Texas") (collectively "Defendants"), showing in support as follows:

## I.    INTRODUCTION AND SUMMARY

1.      This is a lawsuit to recover unpaid overtime wages under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA"), on behalf of call center sales representatives of Defendants.

2.      Plaintiff Dinkins is a former employee of Defendants, Plaintiff West is former employee of YP Texas and Plaintiff Lewis is a current employee of YP Texas.

3.      Although Plaintiffs generally had the same job duties, general management structure, rates of pay, overtime pay requirements, and terms and conditions of employment

during the time period relevant to their claims, there was a corporate name change/merger/acquisition in mid-2012 which resulted in AT&T Advertising Solutions changing its name to YP Advertising. At that time, the employer at the relevant call center became YP Texas, which is a general partner in YP Advertising. Plaintiffs contend that the "employer" in this lawsuit for the relevant time period before the mid-2012 name change is YP Advertising and that the employer for the relevant time period thereafter is YP Texas.

4.      YP Texas operates a call center located at 1440 Empire Central, Dallas, Texas 75247 (the "Dallas Call Center"). At all relevant times, the Dallas Call Center has operated three departments covering three different regional sales territories – the Dallas Department, the Fort Worth Department and the St. Louis Department. Since approximately October 2013, all three Departments have been physically located at the Dallas Call Center. However, prior to that time, the Fort Worth Department was physically located at a call center in Tarrant County, Texas and the St. Louis call center was physically located at a call center in or near St. Louis, Missouri. Only the Dallas Department was physically located at the Dallas Call Center prior to the approximate October 2013 consolidation. However, at all times relevant to this lawsuit, the Dallas Call Center has been the headquarters for and had management responsibilities over all three Departments.

5.      Plaintiffs work(ed) as sales representatives for the Dallas Call Center. At all relevant times, Plaintiffs Dinkins and West worked in the Dallas Department of the Dallas Call Center. Plaintiff Lewis works in the Fort Worth Department of the Dallas Call Center.

6.      Plaintiffs' primary job duties include(d): selling print advertising, internet advertising and other advertising and electronic products and services created and sold by Defendants; new customer research and solicitation; existing customer outreach and

development; customer service; account collections; advertising design/creation; and product fulfillment.

7.      Plaintiffs are/were paid an hourly rate of pay by Defendants. At times, Plaintiffs are/were paid additional compensation in the form of commissions.

8.      Plaintiffs are/were non-exempt employees under the FLSA.

9.      Defendants are/were required to pay Plaintiffs time and one-half their respective regular rates of pay for all hours worked over 40 in a workweek.

10.     Plaintiffs regularly work(ed) in excess of 40 hours per workweek. However, Plaintiffs are not/were not paid corresponding overtime compensation for each and every hour worked over 40 in a workweek because of Defendants' policy/plan for Plaintiffs and/or Plaintiffs' managers to underreport Plaintiffs' actual hours worked.

11.     Specifically, Defendants utilize a timesheet method for tracking sales representatives' hours worked whereby those employees were generally required list certain hours per workday and workweek on a timesheet. The timesheets are then given to the sales representatives' respective managers who then input their time into Defendant's payroll system. In completing that timesheet, sales representatives are told by their managers to generally not claim more than 40 hours per workweek regardless of the actual hours worked. Even though sales representatives are told and/or encouraged by management to work more than an "eight to five" workday, they are also generally instructed by management to list the start of a typical workday at 8:00 a.m. and the end of a typical workday at 5:00 p.m. with a one hour lunch break regardless of whether they worked before 8:00 a.m., after 5:00 p.m., or during the one hour lunch break. Defendants knew/had reason to believe that sales representatives worked more hours than were reflected in the times sheets because management instructed sales representatives to

underreport hours worked and because management observed sales representatives working before 8:00 a.m., during the one hour unpaid lunch break and after 5:00 p.m.

12.     At some point during the time period relevant to this lawsuit, Defendants implemented/attempted to implement a computerized login and logout system which potentially could have been used to accurately track hours worked by sales representatives at the Dallas Call Center if properly implemented and utilized by Defendants. Under that system, time could have been tracked at the Dallas Call Center by a typical sales representative logging in at the first principal activity of the workday, logging out for a bona-fide lunch break, logging back in at the end of the bona-fide lunch break, and logging out upon the conclusion of the last principal activity of the workday. However, that was not done as sales representatives were instructed by management to continue submitting timesheets, as previously described, even after the introduction of that computerized system. Furthermore, sales representatives were generally instructed by management to not login before 8:00 a.m., to logout for a one hour lunch, and to logout at 5:00 p.m. in a typical workday even though management knew/had reason to believe that sales representatives typically worked longer hours than that. At times, when sales representatives were in a login status outside of those time parameters, managers would manually alter the login/logout data to reflect less hours worked than were actually worked.

13.     In addition to off-the-clock work inside of the call center, management also instructed and/or encouraged Plaintiffs and other sales representatives to research new clients and sales opportunities during workday evening hours and on weekends. Management knew/had reason to believe that sales representatives were not paid for this work because they instructed sales representatives to underreport hours worked as described above and because they instructed

and/or encouraged Plaintiffs and other sales representatives to perform that work outside of the hours they were generally permitted to report.

14.     Furthermore, Defendants had a practice of making illegal/improper "chargebacks" to commissions paid/advanced to Plaintiffs and other sales representatives based on alleged "bad debt." The respective regular rates of pay of Plaintiffs and the putative class members must include those improper/illegal chargebacks.

15.     During the time period relevant to this lawsuit, Defendants employed, and continue to employ, numerous sales representatives in the Dallas Call Center's operations that are similarly situated to Plaintiffs, and to each other. Like Plaintiffs, those putative class members were not paid all overtime compensation due because of Defendants' policy/plan for sales representative and/or managers of sales representatives to underreport actual hours worked and/or Defendants' policy/plan to miscalculate the regular rates of pay of Plaintiffs and the putative class members in connection with improper/illegal chargebacks.

16.     Plaintiffs file this lawsuit as a FLSA collective action to recover unpaid overtime wages and corresponding damages on behalf of themselves and all other similarly situated call center sales representative employees in Defendants' Dallas Call Center operations who work/worked in the Dallas Department, Fort Worth Department and St. Louis Department during the time period relevant to this lawsuit.

17.     Plaintiffs allege "willful" FLSA violations by Defendants and seek a limitations period of three years preceding the date this lawsuit was filed and forward.

18.     Plaintiffs and the putative class members seek back wages, liquidated damages, legal fees, costs and all other available remedies as a result of Defendants' violations of the FLSA.

## II.      THE PARTIES, JURISDICTION AND VENUE

### a.      Plaintiff Christopher Dinkins

19.     Plaintiff Dinkins is a former employee of Defendants and is a natural person who resides in Dallas County, Texas. He has standing to file this lawsuit.

20.     Plaintiff Dinkins' relevant employment period was approximately June 2010 to January 2014. At all times, Plaintiff Dinkins worked as a sales representative in the Dallas Department of the Dallas Call Center.

21.     From approximately October 2010 to mid-2012, the name of Plaintiff Dinkins' employer at the Dallas Call Center was AT&T Advertising Solutions.

22.     Due to a corporate name change/merger/acquisition, the name of Plaintiff Dinkins' employer at the Dallas Call Center changed to YP Texas in approximately mid-2012.

23.     Plaintiff Dinkins was a full-time employee, paid an hourly rate, and at times, commissions.

24.     Plaintiff Dinkins regularly worked in excess of 40 hours per workweek.

25.     Defendants, through call center managers, told Plaintiff Dinkins to not report/record more than 40 hours per workweek for payroll purposes, but are aware/have reason to believe that Plaintiff Dinkins routinely worked over 40 hours per workweek.

26.     Plaintiff Dinkins' overtime hours varied per workweek; however, Defendants did not pay him time and one-half his regular rate of pay for all hours worked over 40 in each and every workweek.

### b.      Plaintiff Annette West

27.     Plaintiff West is a former employee of YP Texas and is a natural person who resides in Denton County, Texas. She has standing to file this lawsuit.

28.     Plaintiff West worked for Defendant YP Texas from approximately December 2012 to May 2013 as a sales representative in the Dallas Department of the Dallas Call Center.

29.     Plaintiff West was a full-time employee, paid an hourly rate, and at times, commissions.

30.     Plaintiff West regularly worked in excess of 40 hours per workweek.

31.     YP Texas, through call center managers, told Plaintiff West to not report/record more than 40 hours per workweek for payroll purposes, but is aware/has reason to believe that Plaintiff West routinely worked over 40 hours per workweek.

32.     Plaintiff West's overtime hours varied per workweek; however, YP Texas did not pay her time and one-half her regular rate of pay for all hours worked over 40 in each and every workweek.

### c.     Plaintiff Kevin Lewis

33.     Plaintiff Lewis is a current employee of YP Texas and is a natural person who resides in Tarrant County, Texas. He has standing to file this lawsuit.

34.     Plaintiff Lewis has worked for Defendant YP Texas from approximately November 2012 to present as a sales representative. At all times, he has worked in the Fort Worth Department of the Dallas Call Center. For approximately the first year of his employment, he worked in the Tarrant County call center location for the Fort Worth Department before consolidation of all Departments at the Dallas Call Center in approximately October 2013.

35.     Plaintiff Lewis is a full-time employee, paid an hourly rate, and at times, commissions.

36.     Plaintiff Lewis regularly works in excess of 40 hours per workweek.

37.    YP Texas, through call center managers, told Plaintiff Lewis to not report/record more than 40 hours per workweek for payroll purposes, but is aware/has reason to believe that Plaintiff Lewis routinely works over 40 hours per week.

38.    Plaintiff Lewis' overtime hours varied per workweek; however, YP Texas did not pay him time and one-half his regular rate of pay for all hours worked over 40 in each and every workweek.

### d.    FLSA Putative Collective Action Members

39.    The putative collective action members are all current and former call center sales representatives who work/worked for Defendants' Dallas Call Center in the Dallas, Fort Worth and/or St. Louis Departments, are/were paid hourly plus commission-based compensation, and who are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every workweek during the time period of three years preceding the date this lawsuit was filed and forward.

40.    All of the putative collective action members are similarly situated to Plaintiffs, and to one another, within the meaning of Section 216(b) of the FLSA.

### e.    YP Advertising, L.P. (f/k/a AT&T Advertising Solutions)

41.    Defendant YP Advertising is a foreign limited partnership formed under the laws of the State of Delaware.

42.    YP Advertising's principal office and place of business is 1 AT&T Center, St. Louis, Missouri, 63101.

43.    During the relevant time period of this lawsuit, the name of the employer at the Dallas Call Center changed. Initially, the name of the employer at the Dallas Call Center was AT&T Advertising Solutions, L.P. However, in approximately mid-2012, AT&T Advertising

Solutions changed its name to YP Advertising,[1] and YP Texas, one of the general partners[2] in YP Advertising, then became the name of the employer of sales representatives working for the Dallas Call Center. However, there was no corresponding change in the work locations, facilities, job duties, rates of pay, overtime pay requirements, general management, or terms and conditions of employment for sales representatives working for the Dallas Call Center in connection with the name change in mid-2012.

44.     As to Plaintiffs and putative class members asserting claims in this lawsuit for the time period of three years before this lawsuit was filed up to the date the name change in mid-2012, AT&T Advertising Solutions was their "employer," as that term is defined by the FLSA, for that time period. AT&T Advertising Solutions is now known as YP Advertising.

45.     Consistent with admissions to the Texas Secretary of State by YP Advertising,[3] and on information and belief, YP Advertising was a mere continuation of the business operations of AT&T Advertising Solutions, except in name. Consistent therewith, YP Advertising admits as follows on its website:

> YP is a multi-billion dollar business operating the largest local ad platform in the United States. Formerly AT&T Interactive and AT&T Advertising Solutions, YP launched in May 2012, bringing the two companies together with the mission of helping local businesses and communities grow.[4]

46.     As AT&T Advertising simply changed its name to YP Advertising, as opposed to the transaction being a merger or asset purchase,[5] there is no related successor/predecessor

---

[1] (*See* Exhibit A – Texas Amendment to Registration of a Foreign Limited Partnership).

[2] (*See* Exhibit B – 2012 Texas Secretary of State Periodic Report for Limited Partnership; Exhibit C - 2013 Texas Franchise Tax Report filed by YP Texas).

[3] (*See* Exhibit A - Texas Amendment to Registration of a Foreign Limited Partnership).

[4] (*See* http://corporate.yp.com/about/company-overview/ (Last accessed March 25, 2014)).

[5] (*See* Exhibit A - Texas Amendment to Registration of a Foreign Limited Partnership).

liability issue in this lawsuit. YP Advertising is responsible for the liabilities and obligations of AT&T Advertising as claimed due in this lawsuit.

47.     In the alternative, and to the extent that it is shown by Defendants that AT&T Advertising was merged with/into YP Advertising, the Plaintiffs and the putative class members contend that YP Advertising assumed or is otherwise responsible for the liabilities and obligations, if any, of AT&T Advertising arising out of/related to the operations of the Dallas Call Center. For example, Texas Business Organizations Code § 10.008(b) provides "if the plan of merger does not provide for the … allocation of any liability or obligation of any party to the merger, the … liability or obligation is the joint and several liability of, each of the surviving an new organizations, pro rata to the total number of surviving and new organizations resulting from the merger." As there was no surviving entity known as AT&T Advertising Solutions after the mid-2012 name change to YP Advertising, to the extent that transaction was a merger, then it follows that YP Advertising is liable for any and all liabilities and obligations of AT&T Advertising Solutions as claimed due in this lawsuit.

48.     In the alternative, and to the extent that it is shown by Defendants that YP Advertising acquired AT&T Advertising Solutions via an asset purchase or similar transaction, then YP Advertising is liable for the relevant damages claimed in this lawsuit pursuant to successor liability in connection with the FLSA.

49.     First, there is substantial continuity between YP Advertising and AT&T Advertising Solutions. As previously explained, it appears that AT&T Advertising Solutions simply changed its name to YP Advertising, and the Amendment to Registration filed by YP Advertising with the Texas Secretary of State confirms a total continuity of operations between

AT&T Advertising Solutions and YP Advertising.[6] After that name change, one of YP Advertising's general partners, YP Texas,[7] was then listed as the employer on paychecks issued to Plaintiffs and the putative plaintiffs.

50.     Consistent with admissions to the Texas Secretary of State, Plaintiff Dinkins observed no change in the following operations of the Dallas Call Center at and soon after the name change in mid-2012: sales representative work force, work locations, facilities/office equipment, office services, job duties, rates of pay, methods of pay, scope of business operations/business model, sales representative managers, general management, products and services offered, existing customers, and targeted customers.

51.     Furthermore, senior management and other management continued in place at and after the name change from AT&T Advertising Solutions to YP Advertising. For example, Ms. LaDonna Thomas, who was the general manager of the Dallas Call Center and managed the Dallas, Fort Worth and St. Louis Departments prior to the mid-2012 name change, remained in place with the same apparent job duties and management territory after the name change. Similarly, Ms. Beverly Davis, the sales operations manager for the Dallas Department of the Dallas Call Center, remained in place with the same apparent duties and responsibilities after that mid-2012 name change. Additionally, Mr. Mike Obinwanee, the sales operations manager for the Fort Worth Department of the Dallas Call Center, remained in place with the same apparent duties and responsibilities after the mid-2012 name change. Furthermore, there was no change in the immediate managers of sales representatives after that name change.

52.     YP Advertising had notice of potential liability for unpaid overtime wages at the time of the name-change from AT&T Advertising Solutions in mid-2012. For example, as

---

[6] (*See* Exhibit A - Texas Amendment to Registration of a Foreign Limited Partnership).

[7] (*Id.* at Section 7A).

explained above, senior management for AT&T Advertising Solutions remained in their same jobs/roles for the Dallas Call Center after the name change to YP Advertising. The knowledge of those managers, including knowledge of the obligation to pay overtime compensation to sales representatives and knowledge that sales representatives regularly worked off-the-clock hours and were not paid time and one-half their full regular rates of pay for all overtime hours worked, as explained below in more detail, is imputed to YP Advertising. Ms. Thomas, Ms. Davis, Mr. Obinwanee and other managers knowingly encouraged, permitted and required sales representatives to generally not claim compensation for work performed before 8:00 a.m., during an unpaid one hour lunch break, and after 5:00 p.m. on typical Monday through Friday workdays. Ms. Thomas, Ms. Davis, Mr. Obinwanee and other managers were aware that the sales representatives' managers input hours worked into Defendants' payroll system as opposed to sales representatives inputting that data themselves. Ms. Thomas, Ms. Davis, Mr. Obinwanee and other managers were aware that sales representatives' regular rates of pay were not accurately calculated by virtue of improper commission chargebacks. Ms. Thomas, Ms. Davis and other senior managers had offices at the Dallas Call Center and they were routinely present on the call center floor when sales representatives worked, without compensation, before 8:00 a.m., during unpaid lunch breaks, and after 5:00 p.m. Mr. Obinwanee had an office in the Fort Worth Department call center, and was routinely present on the call center floor when sales representatives worked off-the-clock hours as described above. Those senior managers knew/had reason to believe that sales representatives were working more hours than reported on their time sheets/to payroll. Furthermore, sales representatives were encouraged and expected to engage in new customer research after typical business hours and on weekends. Ms. Thomas, Ms. Davis, Mr. Obinwanee and other managers knew/had reason to believe that those additional hours

worked by sales representatives were not paid. In short, Defendants' Dallas Call Center senior managers, who were in place both before and after the mid-2012 name change, knew/had reason to believe that sales representatives were encouraged, permitted and required to work overtime hours for which they were not paid corresponding overtime compensation in order to boost revenue numbers while keeping labor costs to a minimum.

53.     Additionally, consistent with the facts in this lawsuit, there was an almost identical FLSA overtime lawsuit[8] pending against AT&T Advertising Solutions in Michigan at the time of the 2012 name change. Similar to the present lawsuit, that Michigan lawsuit claimed that sales representatives of AT&T Advertising Solutions, and related entities, at the Troy and Southfield, Michigan call centers worked off-the-clock hours for which they were not paid.[9] Moreover, on December 14, 2012, which was after the mid-2012 name change, there was a court-approved settlement for $1,495,000 in FLSA related damages which applied to several entities including AT&T Advertising Solutions and "successors."[10] Given the similarities in job duties, business model, products and services offered sold or provided, methods of pay, off-the-clock FLSA overtime violations, and obligation to pay overtime compensation for hours over 40 at the Michigan call centers, YP Advertising was aware of the potential liability for unpaid overtime wages relative to the Dallas Call Center operations at the time of the name change.

54.     As AT&T Advertising Solutions changed its name to YP Advertising, a distinct legal entity by the name of AT&T Advertising Solutions no longer exists. While Plaintiffs allege that the situation before this Court is not one of successor liability as much as it is simply a name

---

[8] *See Tankersley, et al. v. Ameritech Publishing, Inc. d/b/a AT&T Advertising Solutions*, *et al.,* Case No. 2:10-cv-14248-GER-MKM, Doc. No. 1, in the U.S. District Court for the Eastern District of Michigan.

[9] *Id.*

[10] (*See* Exhibit D – Court Order Approving FLSA Settlements and Court-approved Notices of Settlement).

change of the corporate entity and employer, there is no currently existing distinct legal entity known as AT&T Advertising Solutions. So to the extent a successor/predecessor issue exits, there is no predecessor to YP Advertising that can provide relief for the claims made in this lawsuit. However, at the time of the name change in mid-2012, AT&T Advertising Solutions had the ability to satisfy the then-existing unpaid wages and damages of sales representatives. As previously explained, an almost identical sales representative overtime lawsuit[11] existed against AT&T Advertising Solutions at the time of the name change in mid-2012 that was settled for approximately $1,495,000 in December 2012.[12] On information and belief, AT&T Advertising Solutions made no claim in that lawsuit that it could not defend the lawsuit or pay the damages sought in that lawsuit. In fact, AT&T Advertising Solutions was a solvent company that had the ability to pay the wages and damages it owed its employees at the time of the name change in mid-2012.

55.     Finally, the overall equities support the imposition of successor liability, should such a showing be required. There was no material change in management, employees, facilities, scope of operations, customer base, or terms and conditions of employment relative to the Dallas Call Center at and soon after the name change in mid-2012 from AT&T Advertising Solutions to YP Advertising. In fact, AT&T Advertising Solutions, as admitted in public records on file with the Texas Secretary of State, simply changed its name to YP Advertising.[13] It would be inequitable to allow an employer to dodge liability for wages and damages it owes its employees by simply changing its name. Furthermore, on information and belief, YP Advertising had the

---

[11] *Id.*

[12] (*See* Exhibit D – Court Order Approving FLSA Settlements and Court-approved Notices of Settlement).

[13] (*See* Exhibit A - Texas Amendment to Registration of a Foreign Limited Partnership).

ability to pay an approximate $1,495,000 settlement in a substantially similar FLSA overtime wage lawsuit after the mid-2012 name change.[14] The principles of equity warrant similar treatment here.

56.     Plaintiffs reserve the right to supplement or amend successor/merger liability claims after adequate discovery.

57.     Plaintiffs reserve the right to seek leave of the Court to substitute and/or add parties should it later be shown that an entity not named in this Complaint is/may responsible for the liabilities of AT&T Advertising Solutions, YP Advertising and/or YP Texas.

58.     YP Advertising may be served with summons by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

**f.      YP Texas Region Yellow Pages, LLC**

59.     Defendant YP Texas is a foreign limited liability company incorporated under the laws of the State of Delaware.

60.     On information and belief, the principal office and place of business of YP Texas is 2247 Northlake Parkway, 10th Floor, Tucker, GA 30084.

61.     During the relevant time period of this lawsuit, the name of the employer of Plaintiffs and the putative class members at the Dallas Call Center changed. Initially, the name of the employer at the Dallas Call Center was AT&T Advertising Solutions, L.P. However, in approximately mid-2012, AT&T Advertising Solutions changed its name to YP Advertising[15]

---

[14] (*See* Exhibit D – Court Order Approving FLSA Settlements and Court-approved Notices of Settlement).

[15] (*See* Exhibit A – Texas Amendment to Registration of a Foreign Limited Partnership).

and YP Texas then became the name of the employer at the Dallas Call Center. In fact, YP Texas is a general partner in YP Advertising.[16]

62.     As a general partner, as opposed to a limited partner, YP Texas is liable for the debts/obligations of YP Advertising.

63.     As to Plaintiffs and putative class members asserting claims in this lawsuit for the time period on and after the name change of the employer for the Dallas Call Center operations in mid-2012, YP Texas is/was their "employer," as that term is defined by the FLSA, for that time period.

64.     Plaintiffs reserve the right to seek leave of the Court to substitute and/or add parties should it later be shown that an entity not named in this Complaint is/may responsible for the liabilities of AT&T Advertising Solutions, YP Advertising and/or YP Texas.

65.     On information and belief, YP Texas is a "division" of YP Holdings, LLC.

66.     YP Texas may be served with summons by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

**g.      Jurisdiction and Venue**

67.     The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

68.     During the times relevant to this lawsuit, Defendants have done business in the State of Texas and continue to do business in the State of Texas.

69.     At all times relevant to this lawsuit, each Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

---

[16] (*See* Exhibit B – 2012 Texas Secretary of State Periodic Report for Limited Partnership; Exhibit C - 2013 Texas Franchise Tax Report filed by YP Texas).

70.     At all times relevant to this lawsuit, each Defendant employed, and continues to employ, two or more employees.

71.     At all times relevant to this lawsuit, each Defendant, when in existence, employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

72.     For example, each Defendant, when in existence, employed two or more employees who regularly engaged in commerce in their daily work. Examples of that commerce include sales of products and services offered/provided by Defendants (*e.g.* Yellow Page ads, websites, etc.) to customers in states other than Texas, communications by phone and internet with customers/prospective customers in states other than Texas, and creation and/or service of products for customers in states other than Texas. Furthermore, each Defendant, when in existence, employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include computers, computer software, communications equipment, telephones, and telephone equipment.

73.     On information and belief, at all times relevant to this lawsuit, each Defendant, when in existence, has had annual gross sales or business volume in excess of $500,000.

74.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims and the claims on behalf of the putative collective action action members on federal law, namely 29 U.S.C. §§ 201, *et seq.*

75.     Venue is proper in the Dallas Division of the United States District Court for the Northern District of Texas because Defendants employed Plaintiffs and many of the putative class members in their call center operations in this judicial division and district, and a

substantial part of the events giving rise to the claims in this lawsuit occurred, and continue to occur, in this judicial division and district.

### III.    FACTUAL BACKGROUND

76.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

77.    Plaintiff Dinkins is a former sales representative employee of Defendants. Plaintiff West is former sales representative employee of YP Texas. Plaintiff Lewis is a current sales representative employee of YP Texas.

78.    YP Texas operates the Dallas Call Center, which is located at 1440 Empire Central, Dallas, Texas 75247.

79.    As set forth above in detail, the name of the employer of Plaintiff Dinkins changed in mid-2012 from AT&T Advertising Solutions to YP Advertising without any corresponding change in his work location, job duties, rates of pay, overtime pay requirements, managers or terms and conditions of employment. At that time, the employer at the Dallas Call Center became YP Texas. YP Texas is a general partner in the YP Advertising entity.

80.    YP Advertising f/k/a AT&T Advertising Solutions is the "employer" under the FLSA for each Plaintiff and putative class member working for the Dallas Call Center operations prior to the mid-2012 name change. YP Texas is the "employer" under the FLSA for each Plaintiff and putative class member working for the Dallas Call Center operations after the mid-2012 name change. Any reference to "Defendants" as employers in this Complaint is so qualified.

81.    At all relevant times, the Dallas Call Center has operated three departments covering three different regional sales territories – the Dallas Department, the Fort Worth

Department and the St. Louis Department. Since approximately October 2013, all three Departments have been physically located at the Dallas Call Center. However, prior to that time, the Fort Worth Department was physically located at a call center in Tarrant County, Texas and the St. Louis call center was physically located at a call center in or near St. Louis, Missouri. Only the Dallas Department was physically located at the Dallas Call Center prior to the approximate October 2013 consolidation. However, at all times relevant to this lawsuit, the Dallas Call Center has been the headquarters for and had management responsibilities over all three Departments.

82.    Plaintiffs work(ed) as sales representatives for the Dallas Call Center. At all relevant times, Plaintiffs Dinkins and West worked in the Dallas Department of the Dallas Call Center. At all relevant times, Plaintiff Lewis has worked, and continues to work, in the Fort Worth Department of the Dallas Call Center. During the time period relevant to this lawsuit, many sales representatives who are similarly situated to Plaintiffs are/have been employed by Defendants in the three Departments of the Dallas Call Center.

83.    Defendants engage in selling and servicing commercial advertising products and services.

84.    Historically, the operations performed by Defendants were commercial in nature in connection with advertisements in the "Yellow Pages." Those "Yellow Pages" commercial advertising services continue on to date, but with an emphasis on electronic format. For example, Defendants' current business operations include:

(a)  Print advertising in the "YP Real Yellow Pages."

(b)  "Online and Mobile Advertising" that provides "advertisers with unsurpassed ability to engage their desired audiences and to connect with consumers via  customized listings on the YP.com site… ." and

> (c)"Complimentary Solutions" which include "small business website development, direct marketing, online reputation management, and customized search engine marking initiatives designed to help merchants grow and support their business."[17]

Furthermore, Defendants' business includes "Connecting Local Businesses with Consumers" whereby:

> The YP portfolio of advertiser products and solutions are designed to provide businesses with a "one-stop shop" of print and interactive marketing tools. Whether the goal is improved visibility in search results, greater online or mobile awareness, an enhanced digital image, or a specific promotional initiative, YP products and technologies are able to deliver.
>
> Our wide range of print and digital advertising solutions help businesses reach local consumers—wherever and whenever they are searching.[18]

85.    Defendants create the products/services that are sold to the customers of Defendants. For example, if a customer is sold a Yellow Pages advertisement, employees of Defendants design and create that advertisement in the "YP Real Yellow Pages." If a customer purchases a website, employees of Defendants design and build that website. At times, employees of Defendants also service/repair customers' websites.

86.    At all times relevant to this lawsuit, Plaintiffs and the putative class members are/were paid a base hourly rate of pay. However, the amount of hourly pay fluctuates because Plaintiffs and the putative class members are/were paid a higher hourly rate of pay during their training periods where they do not/did not receive any additional commission-based compensation. Upon completion of training, which typically lasts several weeks, the hourly rate

---

[17] (*See* http://corporate.yp.com/products/advertisers/ (Last Accessed March 25, 2014)).

[18] (*See* http://corporate.yp.com/products/advertisers/ (Last Accessed March 25, 2014)).

of pay for Plaintiffs and the putative class members is/was reduced as it is/was then possible for those employees to receive commission-based compensation in addition to hourly pay.

87.     As "sales representatives" of Defendants, the primary job duties of Plaintiffs and the putative class members at all Departments of the Dallas Call Center are/were as follows.

88.     Sales representatives work selling new print or electronic/internet advertising for Defendants. In that regard, they are required to research, identify and solicit customers, make and receive phone calls, design advertisements, assist in designing advertisements, follow-up with customers, perform customer service, address product fulfillment, and collect/attempt to collect payment for purchased advertising/services. For their new advertising sales efforts, sales representatives are, at times, paid a commission in addition to their hourly wage. The amount of their commission increases at predetermined marks (i.e. gates or tiers) as a sales representative's total yearly sales increase.

89.     Sales representatives also work to retain existing clients and/or increase advertising/services for existing client accounts. In that regard, sales representatives are required to call on existing accounts, address client needs, act as customer service, collect on accounts, attempt to collect on accounts, propose and sell advertising and other packages/products/services, and prepare a variety of handwritten and electronic paperwork that is necessary to facilitate the sale. Like new sales, sales representatives are paid a commission in addition to their hourly wage for these existing client services.

90.     Additionally, a significant portion of the job duties of sales representatives requires work to collect on delinquent accounts/bad debt. In that regard, sales representatives are required to call on overdue accounts, inquire as to the nature of delinquency, and make efforts to secure payment. Defendants made pay deductions to supposedly recover previously

paid/advanced commission-based compensation from sales representatives if Defendants unilaterally deemed a chargeback for bad debt appropriate.

91.     The written agreement for chargebacks between Defendants and sales representatives allowed for chargebacks of allegedly unearned commission payments/advances in only two manners: (a) deduction of allegedly unearned commissions from the employees' respective future commission payments; and (b) deduction of allegedly unearned commissions from employees' respective last paychecks if employment is terminated.[19] However, in practice, Defendants did not follow that written agreement. For example, Defendants routinely made chargebacks as to an individual sales representative based on "bad debt" customer accounts developed or serviced by other sales representatives who no longer worked for Defendants. Nothing in the written chargeback agreement permits/should permit chargebacks to compensation of one employee for bad debt accounts of a different employee. Furthermore, Defendants had a practice of recovering more compensation in a chargeback than was originally paid to an employee for the corresponding sale. For example, although a sales representative may have been paid a $300 commission on a product/service sold to a customer, if that customer later defaulted on payment in full, Defendants frequently recovered more than $300 in a corresponding "bad debt" chargeback relative to that sale. The agreement does not permit/should not permit Defendants to chargeback more money than was paid a sales representative in the first place on a particular transaction.

92.     At all times relevant to this lawsuit, Defendants classified Plaintiffs and the putative class members as non-exempt employees under the FLSA.

---

[19] (*See* Exhibit E – Relevant Portions of the Compensation Agreement between Defendants and employees, such as Plaintiffs and the putative class members, working for the Dallas Call Center operations).

93.     At all times relevant to this lawsuit, Defendants were required to pay Plaintiffs and the putative class members time and one-half their respective regular rates of pay for all hours worked over 40 in a workweek.

94.     As sales representatives, Plaintiffs and the putative class members regularly work(ed) in excess of 40 hours per workweek. However, Plaintiffs and the putative class members are not/were not paid corresponding overtime compensation for each and every hour worked over 40 in a workweek because of Defendants' policy/plan for sales representatives and/or sales representatives' managers to underreport actual hours worked.

95.     Specifically, at all relevant times, Defendants have used, and continue to use, a timesheet method for tracking sales representatives' hours worked. Under that system, sales representatives are generally required list certain hours per workday and workweek on a timesheet. The timesheets are then given to the sales representatives' respective managers who then input their time into Defendant's payroll system.

96.     In completing the timesheet, sales representatives are told by their managers to generally not claim more than 40 hours per workweek regardless of the actual hours worked. Even though sales representatives are told and/or encouraged by management to regularly work more than an "eight to five" workday, they are also generally instructed by management to list the start of a typical workday at 8:00 a.m. and the end of a typical workday at 5:00 p.m. with a one hour lunch break regardless of whether they worked before 8:00 a.m., after 5:00 p.m., or during the one hour lunch break.

97.     Defendants knew/had reason to believe that sales representatives worked more hours than were reflected in the timesheets because management instructed sales representatives

to underreport hours worked and because management observed sales representatives working before 8:00 a.m., during the one hour unpaid lunch break and after 5:00 p.m.

98.     At some point during the time period relevant to this lawsuit, Defendants implemented/attempted to implement a computerized login and logout system which potentially could have been used to accurately track hours worked by sales representatives at the Dallas Call Center if properly implemented and utilized by Defendants. Under that system, time could have been tracked for work performed inside the call center by a typical sales representative logging in at the first principal activity of the workday, logging out for a bona-fide meal break, logging back in at the end of the bona-fide meal break, and logging out upon the conclusion of the last principal activity of the workday. However, that was not done as sales representatives were instructed by management to continue submitting timesheets, as previously described, even after the introduction of that computerized system. Furthermore, sales representatives were instructed by management to not login before 8:00 a.m., to logout for a one hour lunch break, and to logout at 5:00 p.m. in a typical workday even though sales representatives typically worked longer hours than that. At times, when sales representatives were in a login status outside of those time parameters, managers would manually alter the login/logout data to reflect less hours worked than were actually worked.

99.     In addition to the off-the-clock work inside of the call center, management also instructs and/or encourages sales representatives to research new clients and sales opportunities during workday evening hours and on weekends. Management knew/had reason to believe that sales representatives were not paid for this work because they instructed sales representatives to underreport hours worked as described above and because they instructed and/or encouraged

Plaintiffs and other sales representatives to perform that work outside of the hours they were generally permitted to report.

100.     At all times relevant to this lawsuit, Defendants knew/had reason to believe that the hours reported on the time sheets of the Plaintiffs and putative class members were understated and therefore inaccurate.

101.     At all times relevant to this lawsuit, Defendants knew/had reason to believe that the hours reported to payroll for Plaintiffs and putative class members were understated and therefore inaccurate.

102.     Defendants encouraged, permitted, and/or required Plaintiffs and the putative class members and/or managers of the Plaintiffs and the putative class members to record less hours than were actually worked in a given workweek.

103.     Defendants encouraged, permitted, and/or required Plaintiffs and the putative class members to work evenings and weekends to research new customers for sales to be made at the call center, and Defendants were aware/had reason to believe that hours worked in connection with such activities were not reflected in the time sheets of sales representatives.

104.     Defendants knew/had reason to believe that Plaintiffs and the putative class members regularly worked during unpaid lunch breaks.

105.     In calculating the respective regular rates of pay for Plaintiffs and the putative class members, Defendants cannot deduct/not consider improper/illegal chargebacks. To the extent any overtime was paid during the time period relevant to this lawsuit in which the regular rate of pay was miscalculated due to improper/illegal commission chargebacks, then Plaintiffs and the putative class members are due additional overtime compensation as a result.

106.    During the time period relevant to this lawsuit, Defendants employed, and continue to employ, numerous sales representatives in the Dallas, Fort Worth and St. Louis Departments of the Dallas Call Center that are similarly situated to Plaintiffs, and to each other. Like Plaintiffs, the putative class members: perform/performed the same/similar call center sales representative job duties as Plaintiffs; are/were paid an hourly rate, and at times, commission-based compensation; are/were subject to Defendants' improper/illegal commission chargeback practices; routinely work/worked in excess of 40 hours per workweek; are/were entitled to be paid time and one-half their regular rates of pay when they work/worked more than 40 hours in a workweek; and are/were not paid all overtime compensation due because of Defendants' policy/plan for sales representatives and/or sales representatives' managers to underreport actual hours worked and/or policy/plan to miscalculate their respective regular rates of pay.

107.    Plaintiffs and the putative class members were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each and every workweek during the time period relevant to this lawsuit.

### IV.    CONTROLLING LEGAL RULES

108.    The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

109.    "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

110.    "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

111.    The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

112.    With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

113.    Commissions are wages and count as compensable remuneration for purposes of calculating an employee's regular rate. 29 C.F.R. § 778.117.

114.    The Fifth Circuit has determined that the failure to include commissions in the calculation of overtime is "in violation of the department regulations defining 'regular' and overtime pay." *Donovan v. Grantham*, 690 F.2d 453, 457 (5th Cir. 1982).

115.    Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

## V.    FLSA CLAIMS

116.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

117.    All conditions precedent to this suit, if any, have been fulfilled.

118.    At relevant times, Defendants are/were eligible and covered employers under the FLSA. 29 U.S.C. § 203(d).

119.    At relevant times, each Defendant is/has been an enterprise engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

120.    Each Plaintiff and putative class member working in the Dallas Call Center operations as a sales representative prior to the mid-2012 name change was an employee of AT&T Advertising Solutions for that corresponding time period. 29 U.S.C. § 203(e). AT&T

Advertising Solutions is now known as YP Advertising due to a name change.[20] YP Advertising

is liable for the debts and obligations of AT&T Advertising claimed due in this lawsuit.

121.    Each Plaintiff and putative class member working in the Dallas Call Center

operations as a sales representative on and after the mid-2012 name change was an employee of

YP Texas for that corresponding time period. 29 U.S.C. § 203(e).

122.    YP Texas, as a general partner in the YP Advertising general partnership, is liable

for the debts and obligations of YP Advertising f/k/a AT&T Advertising Solutions claimed due

in this lawsuit.

123.    During the time period relevant to this lawsuit, Plaintiffs and the putative class

members work/worked as sales representatives for the Dallas, Fort Worth and St. Louis

Departments of Defendants' Dallas Call Center.

124.    Plaintiffs and the putative class members are/were paid an hourly rate of pay by

Defendants.

125.    At times, Plaintiffs and the putative class members are/were paid commission-

based compensation in addition to their hourly rates of pay.

126.    The regular rate of pay for Plaintiffs and the putative class members must be

calculated by considering their respective hourly rates and commissions. 29 U.S.C. § 207(e); 29

C.F.R. § 778.117.

127.    Defendants made, and continue to make, improper/illegal chargebacks to

commissions paid to/earned by Plaintiffs and the putative class members. Such improper/illegal

chargebacks to commissions result/resulted in a miscalculation of the regular rates of pay of

Plaintiffs and the putative class members. All overtime compensation due Plaintiffs and the

putative class members must be based on the correct regular rate of pay. Furthermore, to the

---

[20] (*See* Exhibit A – Texas Amendment to Registration of a Foreign Limited Partnership).

extent any overtime compensation was paid to any Plaintiff or putative class member during the time period relevant to this lawsuit, such compensation must be based on the correct regular rate of pay.

128.    Plaintiffs and the putative collective action members regularly work/worked in excess of 40 hours per seven-day workweek as employees of Defendants during the time period relevant to this lawsuit.

129.    Plaintiffs and the putative collective action members are/were entitled to overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every workweek. 29 U.S.C. § 207(a)(1).

130.    Defendants are/were required to pay Plaintiffs and the putative class members time and one-half their respective regular rates of pay for all hours worked over 40 in a seven day workweek.

131.    Defendants failed to pay Plaintiffs and putative collective action members overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

132.    The putative collective action members are/were similarly situated to the Plaintiffs and to each other under the FLSA. 29 U.S.C. § 203(e).

133.    Defendants' violations of the FLSA are/were willful within the meaning of 29 U.S.C. § 255(a). For example, and as described above in detail, Defendants required, permitted, and/or encouraged underreporting of actual hours worked by sales representatives and/or managers of sales representatives. Furthermore, Defendants encouraged, permitted and/or required sales representatives to work evenings and weekends to research new customers for

sales, and were aware that time worked relative to same was not reported in the sales representatives' time sheets. As such, Defendants were aware that sales representatives were not paid for all hours worked over 40 in a workweek. Furthermore, Defendants made improper/illegal chargebacks to commissions paid to Plaintiffs and the putative collective action members, and those improper/illegal chargebacks result in a miscalculation of the regular rates of pay of Plaintiffs and the putative class members. Plaintiffs and the putative collective action members specifically plead recovery for the time period of three years preceding the date this lawsuit was filed forward for their unpaid overtime claims.

134.    Plaintiffs seek all damages available for Defendants' failure to timely pay all overtime wages due.

## VI.    FLSA COLLECTIVE ACTION

135.    Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (Fish, J.) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (Boyle, J.) (same).

136.    Plaintiffs seek to represent a collective action under 29 U.S.C. § 216(b) on behalf of themselves and all current and former sales representatives who are/were employed by Defendants in the Dallas, Fort Worth and St. Louis Departments of the Dallas Call Center and who are/were not paid all overtime compensation due for all hours worked over 40 in each and every workweek. The relevant time period for this collective action is three years preceding the date this lawsuit was filed forward, or such other time period deemed appropriate by the Court.

137.    Plaintiffs reserve the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding.

138.    Plaintiffs further reserve the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

### VII.    <u>JURY DEMAND</u>

139.    Plaintiffs demand a jury trial.

### VIII.    <u>DAMAGES AND PRAYER</u>

140.    Plaintiffs ask that Plaintiffs, and those persons similarly situated to Plaintiffs, be awarded a judgment against Defendants for the following:

   a.    Actual damages in the amount of unpaid overtime wages;

   b.    Liquidated damages under the FLSA;

   c.    FLSA collective action certification, notice and class-wide relief;

   d.    Incentive awards for named Plaintiffs;

   e.    Pre-judgment and post-judgment interest;

   f.    Costs;

   g.    Reasonable attorney's/attorneys' fees; and

   h.    All other relief to which Plaintiffs and the putative class members are entitled.

Respectfully submitted,


By:     /s/ Allen R. Vaught
        Allen R. Vaught
        TX Bar No. 24004966
        MS Bar No. 101695
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas  75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        avaught@baronbudd.com