IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHRISTOPHER DINKINS, ANNETTE §
WEST, KEVIN LEWIS, and RUFUS GRIFFIN §
on behalf of themselves and all others similarly §
situated, §
§
     Plaintiffs, §
§
V. §     CIVIL ACTION NO. 3:14-CV-1463-G
§
YP ADVERTISING & PUBLISHING LLC and §
YP TEXAS REGION YELLOW PAGES LLC, §
§
     Defendants. §

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND
UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

Per this Court's Order of April 21, 2016,[1] which preliminarily approved the settlement agreement of the Parties, Plaintiffs Christopher Dinkins ("Dinkins"), Annette West ("West"), Kevin Lewis ("Lewis"), and Rufus Griffin ("Griffin"), on behalf of themselves, the opt-in plaintiffs, and all members of the settlement classes (collectively, "Plaintiffs"), and Class Counsel file this, Plaintiffs' Unopposed Motion for Final Approval of Collective and Class Action Settlement and Motion for Attorneys' Fees, Costs, and Expenses (the "Motion"). Pursuant to Local Rule 7.1(d), this Motion is supported by a Brief in Support of Plaintiffs' Unopposed Motion for Final Approval of Collective and Class Action Settlement and Attorneys' Fees, Costs, and Expenses (the "Brief"), set forth below, which identifies in detail the factual and

---

[1] (ECF No. 96 – Order Granting Preliminary Approval).

*Motion for Final Approval of Collective
and Class Action Settlement and Motion
for Attorneys' Fees, Costs, and Expenses*     - i -

legal basis for this Motion.[2] As no class members have objected to the settlement and the proposed award of attorneys' fees, costs and, expenses and no class members have opted-out of the settlement class, and as shown further in the Brief, the parties respectfully request the Court grant final approval of the settlement agreement and proposed settlement.

Plaintiffs' Motion and Brief are supported by evidence contained in a separately filed Appendix, pursuant to Local Rules 7.1(i) and 7.2(e). Plaintiffs incorporate the Brief and Appendix to this Motion as if set forth fully herein.

Respectfully submitted,

By:     s/Allen R. Vaught
        Russell W. Budd
        TX Bar No. 03312400
        Allen R. Vaught
        TX Bar No. 24004966
        MS Bar No. 101695
        Melinda Arbuckle
        TX Bar No. 24080773
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas 75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        rbudd@baronbudd.com
        avaught@baronbudd.com
        marbuckl@baronbudd.com

        ATTORNEYS FOR PLAINTIFFS

---

[2] Terms used in this Motion for Final Approval have the meanings assigned to them in the Settlement Agreement and in this Motion for Approval (*See* ECF No. 95-1. App. pp. 7-19, ¶II.).

*Motion for Final Approval of Collective*      - ii -
*and Class Action Settlement and Motion*
*for Attorneys' Fees, Costs, and Expenses*

## CERTIFICATE OF SERVICE

On October 7, 2016, I electronically submitted the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas using the CM/ECF method of the court. I certify that I have served all counsel of record electronically.

s/Allen R. Vaught
Allen R. Vaught

## CERTIFICATE OF CONFERENCE

I certify that on September 15, 2016, September 19, 2016, September 20, 2016, October 3, 2016, October 5, 2016, and October 6, 2016, Class Counsel conferred with counsel for Defendants regarding the relief requested in this motion. On October 6, 2016, Counsel for Defendants stated that Defendants are unopposed to the relief requested in this motion.

s/Allen R. Vaught
Allen R. Vaught

*Motion for Final Approval of Collective*
*and Class Action Settlement and Motion*
*for Attorneys' Fees, Costs, and Expenses*                    - iii -

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     BACKGROUND ................................................................................ 4

        A.  The Litigation ......................................................................... 4

        B.  Preliminary Approval of the Settlement Agreement ..................................... 5

        C.  The Settlement Classes ......................................................................... 6

        D.  The Settlement ......................................................................... 6

        E.  Notice Process ......................................................................... 7

            1.  The Settlement's Class Notice Requirements Were Satisfied. ..............................7

            2.  CAFA's Notice Requirements Have Been Satisfied. ..............................8

III.    ARGUMENTS AND AUTHORITIES................................................................. 9

        A.  The Best Practicable Notice of Settlement Has Been Provided to the Class............... 9

        B.  Final Approval is Appropriate Under Rule 23 If it Is Fair, Adequate, and Reasonable, and Under the FLSA If it Is Fair. ................................................................. 10

        C.  The Settlement is Presumptively Fair Because of the Lack of Any Objection to the Settlement by Class Members to Date, the Discovery Conducted, Class Counsel's Experience, and the Arms'-Length Negotiations........................................................ 11

        D.  The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation................................................................. 11

        E.  The Court Should Grant Final Class Certification and Collective Action Designation. ................................................................................ 12

        F.  The Court Should Finally Approve the Service Awards to the Designated Plaintiffs and Opt-in Plaintiffs................................................................. 13

        G.  The Court Should Finally Approve Class Counsels' Reasonable Attorney Fees, Costs, and Expenses as Allocated in the Settlement Agreement........................................... 13

            1.  The Case Required Substantial Time and Labor ..............................16

*Motion for Final Approval of Collective*          - iv -
*and Class Action Settlement and Motion*
*for Attorneys' Fees, Costs, and Expenses*

2.  The Issues Involved Presented Novelty and Required Skilled Attorneys to Prosecute the Action .............................................................................17

3.  Class Counsel Assumed Considerable Risk Due to the Contingency Relationship Between Counsel and Plaintiffs and Preclusion from Other Employment.................................................................................................18

4.  Class Counsel Achieved an Excellent Result ........................................19

5.  The Requested Attorneys' Fees, Costs, and Expenses are Lower than Fees Awarded in Similar Cases ...............................................................19

6.  Remaining *Johnson* Factors Support the Request for Attorneys' Fees, Costs, and Expenses.................................................................................19

*Motion for Final Approval of Collective*          - v -
*and Class Action Settlement and Motion*
*for Attorneys' Fees, Costs, and Expenses*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boeing Co. v. Van Gemert,*
  44 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)..............................................................14

*Camden I Condo. Ass'n, Inc. v. Dunkle,*
  946 F.2d 768 (11th Cir. 1991) ...............................................................................................14

*Cotton v. Hinton,*
  559 F.2d 1326 (5th Cir. 1977) ...............................................................................................10

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974)..................................................................................................................9

*Jenkins v. Trustmark Nat'l Bank,*
  300 F.R.D. 291 (S.D. Miss. 2014) .......................................................................9, 13, 18, 19

*Johnson v. Ga. Hwy Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974) ....................................................................................... *passim*

*Lynn's Food Stores, Inc. v. U.S.,*
  679 F.2d 1350 (11th Cir. 1982) .............................................................................................10

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950)..................................................................................................................9

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010,*
  910 F. Supp. 891 (E.D. La. 2012) .........................................................................................10

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985)..................................................................................................................9

*Smith v. Tower Loan of Miss., Inc.,*
  216 F.R.D. 338 (S.D. Miss. 2003) ...........................................................................14, 15, 19

*Turner v. Murphy Oil USA, Inc.,*
  472 F. Supp. 2d 830 (E.D. La. 2007)....................................................................................18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.,*
  669 F.3d 632 (5th Cir. 2012) .................................................................................................14

*Vela v. City of Houston,*
  276 F.3d 659 (5th Cir. 2001) ...........................................................................................14, 19

*Motion for Final Approval of Collective*           - vi -
*and Class Action Settlement and Motion*
*for Attorneys' Fees, Costs, and Expenses*

**Statutes and Rules**

28 U.S.C. § 1715(d) ...................................................................................................9

29 U.S.C. § 216(a) ....................................................................................................6

29 U.S.C. § 216(b) ....................................................................................................3

FED. R. CIV. P. 23 ............................................................................................. *passim*

Fed. R. Civ. P. 23(a) .................................................................................................3

**Secondary Source**

*Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004), § 21.6 at 309....................10

*Motion for Final Approval of Collective*          - vii -
*and Class Action Settlement and Motion*
*for Attorneys' Fees, Costs, and Expenses*

**BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND
UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

Plaintiffs Christopher Dinkins, Annette West, Kevin Lewis, and Rufus Griffin, on behalf
of themselves, the opt-in plaintiffs, and all members of the settlement classes, (collectively,
"Plaintiffs"), submit this Brief in Support of Unopposed Motion for Final Approval of Collective
and Class Action Settlement and Motion for Attorneys' Fees, Costs, and Expenses, and
respectfully show in support as follows.

## I.      INTRODUCTION

Plaintiffs' First Amended Complaint pleads claims for unpaid overtime wages under the
Fair Labor Standards Act ("FLSA") in addition to Texas state law claims for Money Had and
Received and Missouri state law unpaid overtime wage claims. (MFA[3] App. pp. 1-2, ¶¶ 1 & 2
(ECF No. 97 – Plaintiffs' First Amended Complaint)).

On April 21, 2016, this Court preliminarily approved the Parties' proposed settlement and
Settlement Agreement reached in this case, found that the Settlement Agreement was the result
of "good faith, arms' length settlement negotiations," and certified settlement classes of
approximately 750 current and former telephone sales representatives ("TSRs") "pursuant to
Section 16(b) of the FLSA" and "pursuant to FED. R. CIV. P. 23." (ECF No. 96, ¶¶5 - 7).

The Settlement Agreement provides a claims-made fund of $2,100,000.00 (the
"Maximum Gross Settlement Amount"), including Class Counsel's Fees, Costs and Expenses, to
resolve the Released Claims including the FLSA claims of the Plaintiffs, Opt-in Plaintiffs and
Settlement Class members who timely submitted claim forms (the "Final TSR FLSA Settlement

---

[3] ("MFA" stands for Motion for Final Approval, and is provided to distinguish the citations to the
Appendix filed with this Motion from citations herein to the Appendix filed in support of the Motion for
Preliminary Approval).

Class") and Texas State Law claims ("Final TSR Texas State Law Settlement Class") and Missouri State Law claims ("Final TSR Missouri State Law Settlement Class") of all Plaintiffs, Opt-in Plaintiffs and Settlement Class members who did not timely opt-out from the Settlement Class (ECF No. 95-1, App. pp. 10 - 11, ¶II.Q, pp. 20 – 22, ¶V.). It also releases approximately $2,000,000.00 in potential Settlement Class member liability for the Defendants' and Released Persons' potential causes of action based on any claim of fraud relative to alleged misrepresentations made by Releasing Persons in the sales process while employed by Defendants (hereafter "Released Possible Fraud Claims"). (ECF No. 95-1, App. pp. 29-30, ¶IX.A.; MFA App. pp. 58 - 59, ¶13 (Vaught Supp. Decl.)). The proposed settlement here satisfies the requirements of Rule 23, and is "fair, reasonable, and adequate" and is also fair, reasonable and adequate for the purposes of the FLSA.

After the Settlement Agreement was preliminarily approved, the conditionally certified Settlement Classes were given notice of the proposed settlement and the opportunity to submit a claim form to receive a portion of the fund. (MFA App. p. 38 - 39, ¶¶4 - 13  (Claims Admin. Decl.)). They were also notified of their opportunity to object to the settlement, opt-out of the settlement, and appear at the final approval hearing. (*Id.*).

As demonstrated in the declaration of Laura Ortiz ("Ortiz"), a representative of Class Action Administration LLC ("CAA"), the Court appointed claims administrator in this case, as of August 30, 2016, the Settlement Class has expressed overwhelming approval of the settlement agreement. (MFA App. p. 40, ¶15). Of the 728 Settlement Class Members who received the claim form in the mail, no exclusion forms ("opt-out" requests) or objections were made. (MFA

App. p. 39, ¶¶10-13). Additionally, based on supplemental data[4] provided to Class Counsel by Ortiz on October 5, 2016, $811,462.19 was claimed by Class Members and approved by Defendants. (MFA App. pp. 3 – 4, ¶11 & pp. 65 – 67). This claimed amount totals approximately 73.5% of the "Revised Gross Settlement Amount" of $1,103,859.19 as defined in the Settlement Agreement and calculated by CAA (*see* ECF No. 95-1, App. p. 16, ¶II.OO., pp. 23-23, ¶VI.D.; & MFA App. p. 58, ¶12, p. 69)

Now, Plaintiffs request that this Court grant final approval of the settlement. The Defendants do not oppose the relief sought herein. In connection with requesting final approval, Plaintiffs also request the Court: (1) grant Final Judgment on the Released Claims; (2) confirm as final the certification of the Settlement Classes conditionally certified in its Order Approving Preliminary Settlement for purposes of settlement only;[5] (3) find for purposes of settlement only, that the TSR FLSA Settlement Class satisfies the requirements to be maintainable as a settlement collective action under 29 U.S.C. § 216(b) and the TSR Texas State Law Settlement Class and the TSR Missouri State Law Settlement Class satisfy the requirements of Fed. R. Civ. P. 23(a) ad are maintainable under Rule 23(b)(3); (4) final approval of the Service Payments to certain Plaintiffs and Opt-in Plaintiffs as provided in the Settlement Agreement; (5) approval of the Class Counsel's Fees, Costs, and Expenses as provided for in the Settlement Agreement and otherwise described herein; (6) dismissing the Released Claims from the Litigation on the merits and with prejudice and permanently enjoining all members of the Final Settlement Classes from prosecuting against Defendants and the Released Persons any Released Claims; and, (7)

---

[4] This supplemental data reflects Claim Form Packets approved by Defendants after the August 30, 2016 declaration of Ortiz provided in support of this Motion (MFA App. pp. 37 – 40). That supplemental data is confirmed in the Supplemental Declaration of Allen Vaught. (MFA App. pp. 3 – 4, ¶11 & pp. 65 – 67).
[5] (ECF No. 96, ¶¶5 - 7).

asserting and retaining jurisdiction over the claims alleged, the Parties in the Litigation, and the implementation and administration of this Settlement Agreement.

## II.   <u>BACKGROUND</u>

### A. <u>The Litigation</u>

On April 22, 2014, Plaintiffs Christopher Dinkins, Annette West, and Kevin Lewis filed their Original Complaint, seeking damages under the FLSA on a collective action basis for unpaid overtime and for the Defendants' allegedly illegal policy of making "chargebacks" of commissions paid to Plaintiffs. (ECF No. 1, Original Complaint). Plaintiffs further asserted claims for Money Had and Received pursuant to Texas state law, and for unpaid overtime pursuant to Missouri state law. (MFA App. pp. 1 – 2, ¶¶1 – 2 & p. 25-26, ¶¶112 –115).

Throughout the litigation, the Defendants disputed (and continue to dispute) Plaintiffs' allegations. For instance, on June 16, 2014, the Defendants filed a Motion to Dismiss and Memorandum of Law in Support Thereof (the "MTD"), claiming that Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because the Defendants claimed that their chargeback process was, as a matter of law, permissible under the FLSA, and pursuant to Federal Rule of Civil Procedure 12(b)(1) alleging that the Court lacked subject matter jurisdiction over all or a portion this lawsuit because the commission chargeback process was governed by a collective bargaining agreement, and thus preempted by Section 301 of the Labor Management Relations Act ("LMRA"). (ECF No. 11). Plaintiffs vigorously opposed the Defendants' MTD. (ECF No. 32).

While the briefing period relative to that MTD ran, nineteen (19) individuals opted-in to the lawsuit prior to any notice of the lawsuit being issued. (ECF Nos. 12-21, 27-31, 39-42).

On March 27, 2015, this Court entered its Memorandum Opinion and Order denying Defendants' MTD. (ECF No. 43). The case was referred to mediation, and discovery was stayed. (ECF Nos. 50, 53). On July 8, 2015, the Parties engaged in a full day of mediation with Gloria M. Portela in Houston, Texas. (ECF No. 54). The case did not resolve at that point. (*Id*.).

Following that mediation, fourteen (14) more individuals opted-in to the lawsuit prior to any notice of the lawsuit being issued. (ECF Nos. 56-58, 61-65, 68-69, 71-72, 76, 82).

On January 6, 2016, the Parties attempted a second mediation, and used the services of Mark Rudy, a nationally recognized mediator, with special expertise in mediating purported class and collective actions. (ECF No. 73). Substantial ongoing negotiations followed a full day of mediation after which, the Parties reached the settlement now before this Court.

Prior to each mediation, the Parties submitted detailed mediation briefs to each mediator including their respective assessments of the case. For instance, Plaintiffs submitted damages calculations supported by earning statements and detailed declarations of named and opt-in Plaintiffs. During each of the mediations, the Parties presented their respective views of the law and the facts and potential relief for the proposed Settlement Classes. While the Parties did not reach agreement in their face-to-face sessions, they continued to negotiate and finally, with the assistance of Mediator Rudy, ultimately reached a tentative settlement agreement. At all times, the Parties' settlement negotiations were adversarial, non-collusive, and at arms'-length.

**B.  Preliminary Approval of the Settlement Agreement**

On April 21, 2016, this Court preliminarily approved the Settlement Agreement reached in this case, found that the Settlement Agreement was the result of "good faith, arms' length settlement negotiations," and conditionally certified settlement classes of approximately 750

current and former "TSRs" "pursuant to Section 16(b) of the FLSA" and "pursuant to Fed. R. Civ. P. 23 [for the Texas and Missouri state law claims]." (ECF No. 96, pp. 4 - 6).

## C.  **The Settlement Classes**

Pursuant to the Settlement Agreement, the Court certified the following FLSA class under 29 U.S.C. § 216(a) and Texas and Missouri state law settlement classes under Federal Rule of Civil Procedure 23 for settlement purposes only:

1.  TSR FLSA Settlement Class pursuant to Section 16(b) of the FLSA…[for] any and all current and former TSRs who are/were working at Defendants' call center locations in Dallas, Texas; Fort Worth, Texas; and/or, Olivette, Missouri from three (3) years preceding the filing of the complaint through the Preliminary Approval Order.

2.  TSR Texas State Law Settlement Class [pursuant to Rule 23 for] …any and all current and former TSRs who are/were working at Defendants' call center locations in Dallas, Texas and/or Fort Worth Texas, from three (3) years preceding the filing of the complaint through the Preliminary Approval Order; and

3.  "TSR Missouri State Law Settlement Class [pursuant to Rule 23 for] … any and all current and former TSRs who are/were working at Defendants' call center location in Olivette, Missouri from three (3) years preceding the filing of the complaint through the Preliminary Approval Order.

(ECF No. 96, ¶¶5 - 7).

## D.  **The Settlement**

The Settlement creates a common fund claims-made settlement with the Maximum Gross Settlement Amount of $2,100,000. (ECF No. 95-1, App. p. 12, ¶V. & pp. 20 – 21, ¶V.).  CAA was responsible for deducting from the Maximum Gross Settlement Amount, Class Counsel's Fees, Costs and Expenses approved by the Court ($840,000.00), Mediation Expenses ($8,000.00), Service Payments ($57,000.00), Settlement Expenses ($28,000.00), and Employer-Paid Payroll Taxes (estimated at $63,140.81) to compute the Revised Gross Settlement amount

of $1,103,859.19. (ECF No. 95-1, App. p. 16, ¶II.OO., pp. 23 - 24, ¶VI.D.; & MFA App. p. 58, ¶12, p. 69).

If the Settlement Agreement receives final approval in connection with this Motion, Settlement Class members who timely submitted claim forms will be allocated a portion of the Revised Gross Settlement Amount based on the number of weeks worked by that class member, with the unclaimed monies not being paid and remaining as the property of the Defendants. (ECF No. 95-1. App. pp. 23 – 24, ¶¶VI.D. &VI.E.; & pp. 43 - 47, ¶¶XIII.). Settlement Class members who did not opt-out from the Settlement Agreement also receive the benefit of the Released Possible Fraud Claims estimated at a value of approximately $2,000,000.00. (ECF No. 95-1, App. pp. 29-30, ¶IX.A.; pp. 42-43, ¶XII.; & MFA App. pp. 58 - 59, ¶13).

In exchange, all Final Settlement Classes[6] are bound by the Final Approval Order, the Final Judgment, and the releases set forth in the Notice and the Settlement Agreement,[7] unless they timely submitted an exclusion form. The Settlement Class members provided a release of all past and present matters, including but not limited to: disputes, claims, etcetera; all claims asserted in the litigation; all claims for unpaid wages, minimum wages, liquidated damages; claims related to the allegedly impermissible chargebacks or under the RICO statute. (ECF No. 95-1, App. pp. 31-34 ¶ IX.B.1-10). The scope of the releases was fully described in the Settlement Agreement, Court-approved Notice, , and the Preliminary Approval Order. (ECF No. 95-1, App. pp. 29 – 36, ¶IX; pp. 62 - 94; & ECF No. 96.). As shown in the declaration of Laura Ortiz, no opt-out/exclusion forms were received by CAA. (MFA App. p. 39, ¶¶10-13).

**E.  Notice Process**

    **1.  The Settlement's Class Notice Requirements Were Satisfied.**

---

[6] Defined at ECF No. 95-1, App. pp. 10 - 11, ¶II.Q.
[7] (ECF No. 95-1, App. pp. 10 - 11, ¶II.Q.; pp. 42 - 43, ¶XII. & pp. 62-94).

The procedures for giving notice to the Class Members, as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order, have been properly followed. (ECF No. 96; ECF No. 95-1, App. pp. 37 - 42, ¶¶ X.-XI.; MFA App. pp. 37-40, ¶¶1-15). The Court directed that the proposed Class Notice and individualized claim forms be sent to class members in the manner specified by the Settlement Agreement (ECF No. 96, ¶¶15-27).

On or about May 11, 2016, counsel for the Defendants provided the CAA with a spreadsheet containing the names and addresses of individuals identified as Members of the Settlement Classes. (MFA App. p. 38, ¶4). Prior to mailing the Court-approved Notices and claim forms ("Notice Packets"), CAA used the National Change of Address database and various credit reporting databases to update Class Members' addresses. (MFA App. p. 38, ¶5). CAA also maintained a website, www.dinkinsvypsettlement.com, and maintained a dedicated toll-free number so that Class Members could get additional copies of the Notice Packets. (MFA App. p. 39, ¶ 8).

On June 21, 2016, CAA mailed the Notice Packets to the Class Members. (MFA App. p. 38, ¶6). CAA made continued attempts to research addresses for Class Members whose Notice Packets were returned. (MFA App. p. 38, ¶7). Only 32 Notice Packets were returned undeliverable as of August 30, 2016 resulting in a presumption that 97.1% of the Settlement Class received the Notice Packets. (*Id.*). Thus, the Settlement Administrator followed accepted best practices to ensure that the Notice reached as many Class Members as feasible.

## 2. CAFA's Notice Requirements Have Been Satisfied.

On April 25, 2016, the Defendants served upon the Attorney General of the United States and the appropriate officials of the states in which the Class Members reside a notice of the Settlement consisting of: a copy of the complaint in this action; a notice of the scheduled judicial

hearings; copies of the Settlement Agreement; the approved Notice; and the estimate of the number of putative Missouri and Texas state law class members residing in each state and their estimated proportionate share of the entire settlement. (MFA App. p. 71, ¶1 (Decl. of Tasha Inegbenebor)). No state official has transmitted a comment regarding this Settlement Agreement. (MFA App. p. 71, ¶2). The Final Approval Hearing, set for October 18, 2016, is being held more than 90 days after the issuance of the CAFA notice, such that the Final Approval Order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met. *See* 28 U.S.C. § 1715(d).

### III.        ARGUMENTS AND AUTHORITIES

**A.  The Best Practicable Notice of Settlement Has Been Provided to the Class.**

The mailing of the Notice Packets to Class Members and the general administration of the notice process, as described above, meet the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class Members. (ECF No. 96, ¶19 ("The Settlement Notice to be sent to members of the Settlement Classes [. . .] is hereby found to be the best practicable means of providing notice under the circumstances and, when sent, shall constitute due and sufficient notice of the proposed Settlement and the Final Approval Hearing [. . .]")). *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections"); *Jenkins v. Trustmark*

*Nat'l Bank*, 300 F.R.D. 291, 301-302 (S.D. Miss. 2014). Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, objection, comment, and approval process.

**B.   Final Approval is Appropriate Under Rule 23 If it Is Fair, Adequate, and Reasonable, and Under the FLSA If it Is Fair.**

"Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable and adequate." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 891, 930-31 (E.D. La. 2012) (citations omitted). *See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("It is often said that litigants should be encouraged to determine their respective rights between themselves. Particularly in class action suits, there is an overriding public interest in favor of settlement. [. . .] It is common knowledge that class action suits have a well-deserved [*sic*] reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action.") (internal citations omitted).

On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable" recognizing

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004), § 21.6 at 309.

**C.  The Settlement is Presumptively Fair Because of the Lack of Any Objection to the Settlement by Class Members to Date, the Discovery Conducted, Class Counsel's Experience, and the Arms'-Length Negotiations.**

As previously noted, there were no objections or opt-out forms received by CAA. (MFA App. p. 39, ¶¶10 - 13). Furthermore, the Court, after considering briefing by the parties and a hearing on Plaintiffs' Motion for Preliminary Approval of this Settlement, found that preliminary approval of the settlement was appropriate, in part, because "the terms and conditions set forth in the Settlement Agreement were the result of good faith, arms' length settlement negotiations between competent and experienced counsel for both plaintiffs and defendants." (ECF No. 96, p. 4). The claims rate and lack of objections or exclusion requests further ratifies the Court's previous finding. (MFA App. pp. 39 – 40, ¶¶10 - 15).

**D.  The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.**

419 Claim Form Packets representing $811,462.19 in compensation to the Final Settlement Class were accepted by Defendants with one additional Claim Form Packet pending review. (MFA App. pp. 57 – 59, ¶11).The Accepted Claim Form Packets as of October 5, 2016 results in approximately 73.5% of the "Revised Gross Settlement Amount" claimed with 55.9% of the Settlement Class having submitted Claim Form Packets that were accepted by Defendants. (ECF No. 95-1, App. p. 16, ¶II.OO., pp. 23 - 23, ¶VI.D.; MFA App. pp. 38 – 40, ¶¶5-15; & MFA App. pp. 57 – 58,  ¶11, pp. 65 - 67). Additionally, all of the Settlement Class Members, including the Final TSR FLSA Settlement Class, will receive the benefit of the  Released Possible Fraud Claims as there were no opt-outs from the Settlement Class. (ECF No. 95-1, App. pp. 29-30, ¶IX.A., pp. 42-43, ¶XII.; MFA App. p. 39, ¶¶12-13; & MFA App. p. 39, ¶¶12 & 13).

While the value of the damages for the claims the Defendants may have asserted against members of the Settlement Class is difficult to determine due to the range of damages available

pursuant to various causes of action which may have been asserted (*e.g.* punitive damages for fraud), it is reasonably accurate to say that the Final Settlement Class received monetary and non-monetary benefits that should be valued at no less than $2,811,462.19. (MFA App. pp. 58 - 59, ¶¶ 13 & 15, pp. 61 – 62, ¶24).

Furthermore, the settlement of this Lawsuit provides the Final Settlement Class with known compensation as opposed to the potential for no compensation due to the uncertainties of litigation. It also reduces ongoing litigation which would have been vigorously opposed by the Defendants. Finally, it provides all Final Settlement Class members with release of certain claims premised on fraudulent sales that the Defendants may have asserted against them in separate litigation.

### E.  The Court Should Grant Final Class Certification and Collective Action Designation.

The Court's Preliminary Approval Order provisionally certified the Settlement Classes pursuant to FED. R. CIV. P. 23, and provisionally designated the case as a FLSA collective action. (ECF No. 96,  ¶¶2 – 7). The Court ruled that, for purposes of settlement, the Class meets the Rule 23 requirements as well as the FLSA collective action requirements. (*Id.*). The Court also appointed the named Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel (ECF No. 96, ¶¶8 - 9).

During the time period between the initial mailing of the Settlement Notice to the Class Members and the August 22, 2016 Bar Date, no Class Member objected to or sought to be excluded from the Settlement Agreement. (MFA App. p. 39, ¶¶10 – 13). This demonstrates that the three certified classes, Class Representatives and Class Counsel were proper.

For these reasons, and the reasons set forth in Plaintiffs' motion for preliminary approval, Class Counsel respectfully submit that the Court should grant final certification and collective

action designation for purposes of settlement of this matter and should confirm the appointment of the Class Representatives and Class Counsel.

**F.   The Court Should Finally Approve the Service Awards to the Designated Plaintiffs and Opt-in Plaintiffs.**

The Settlement Agreement preliminarily approved by the Court set forth Service Award payments ranging from $5,000 to $1,000 per specific individual who provided contribution to this litigation above and beyond absent class members. (ECF No. 95-1, App. p. 16, ¶II.PP.). These Service Awards reflect certain Plaintiff and opt-in Plaintiff participation in case preparation and mediation. (MFA App. pp. 62 – 63,  ¶¶ 26 – 27). All Class Members were provided with notice that some individuals would receive Service Awards, but there were no objections by any Class Member to same. (ECF No. 95-1, App. p. 65, ¶9 & MFA App. p. 39, ¶¶10 - 11).

**G.   The Court Should Finally Approve Class Counsels' Reasonable Attorney Fees, Costs, and Expenses as Allocated in the Settlement Agreement.**

Plaintiffs also seek, and Defendants are unopposed, to an award of attorneys' fees, costs, and expenses in the amount of $840,000, and the Settlement Class Members were advised in the court-approved written notice of that amount sought for attorneys' fees, costs and expenses. (ECF No. 95-1, App. p. 64, ¶8 & pp. 81 - 82, ¶8 (notices to Class Members from CAA explaining Class Counsel will seek 40% of the Maximum Gross Settlement Fund of $2,100,000 for attorneys' fees, costs, and expenses totaling $840,000); & MFA App. p. 61, ¶21). No Class Member objected to that proposed attorneys' fees, costs, and expense award. (MFA App. p. 158, ¶¶10 - 11). Also, no opt-out forms were received by CAA. (MFA App. p. 39, ¶¶12 - 13).

"It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained." *Jenkins*, 300

F.R.D. at 306 (citing *Boeing Co. v. Van Gemert*, 44 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991)). Courts in the Fifth Circuit frequently grant attorneys' fees as a reasonable percentage of a common fund. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, (5th Cir. 2012) (endorsing use of percentage method when calculating attorneys' fees in common fund class action cases). While awards "commonly fall between [a lower end of] 20% [. . . and an] upper end of 50%," some courts are reluctant to order an award of greater than one third of a common fund. *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003); *see also*, *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) ("the customary contingency fee in labor litigation is … 35 to 40 percent.").

Once a reasonable benchmark percentage is found, courts must consider review the percentage for its reasonableness under the framework set forth in *Johnson v. Ga. Hwy Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The relevant factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases.

*Id.* at 717-19.

Here, the Settlement Agreement contemplates "CLASS COUNSEL FEES, COSTS AND EXPENSES" (hereafter "attorneys' fees, costs, and expenses")  equal to an amount not to exceed 40% of the "MAXIMUM GROSS SETTLEMENT AMOUNT" of $2,100,000, which equals $840,000. (ECF No. 95-1, App. p. 8, ¶II.G., p. 26, ¶VII.A). The legal services agreements

entered by Plaintiffs, and consented to by the Original Opt-In Plaintiffs, specified a 40% contingency fee after recovery of costs by Plaintiffs' counsel. (MFA App. pp. 59 - 61, ¶¶17 & 19 – 20). A 40% attorneys' fees, costs, and expenses recovery is in line with the contingency fee agreements between the undersigned and the named Plaintiffs. *Smith*, 216 F.R.D. at 368. However, as explained below, the actual attorneys' fees, costs, and expenses requested by Class Counsel is less than the 40% contingency fee specified in the legal service agreements.

In addition to monetary compensation, the benefit conferred upon the Class Members pursuant to the Settlement Agreement includes the Released Possible Fraud Claims which are valued at approximately $2,000,000. (ECF No. 95-1, App. pp. 29-30, ¶IX.A.; & MFA App. pp. 58 - 59, ¶13).  The Settlement Agreement and Order granting preliminary approval of the Settlement Agreement provide that Class Counsel may use the value of Released Possible Fraud Claims in evaluating the degree of success obtained relative to an award of attorneys' fees, costs, and expenses. (;ECF No. 95-1, App. p. 26, ¶VII.A., pp. 29-30, ¶IX.A.; & ECF No. 96, ¶11).

Accordingly, if the Court adds the value of the Released Possible Fraud Claims ($2,000,000.00) with the total Settlement Payment to be paid to all Authorized Claimants ($811.462.19) (*i.e.* the remuneration to be paid to Settlement Class members who timely returned claim forms) the actual percentage of attorneys' fees, costs, and expenses sought ($840,000.00) relative to the total relief provided to the Final Settlement Class members ($2,811,462.19.) is only 29.9%. (MFA App. pp. 61 - 62, ¶24).

Alternatively, if the Court evaluates the degree of success obtained by Class Counsel by adding the Maximum Gross Settlement Amount ($2,100,000.00) (*i.e.* the maximum remuneration that could have been paid to Settlement Class members) with the Released Possible Fraud Claims ($2,000,000.00), then the $840,000.00 request for attorneys' fees, costs, and

expenses represents 20.5% of the maximum settlement value negotiated by Class Counsel for the Class Members. (MFA App. p. 62, ¶25)

Therefore, regardless of whether the Court finds that the value of relief obtained by Class Counsel for their clients in this Lawsuit is equal to the (1)Total Settlement Payment to be paid to all Authorized Claimants plus the value of Released Possible Fraud Claims ($2,791,378.86), or the (2) Maximum Gross Settlement Amount plus the value of the Released Possible Fraud Claims ($4,100,000.00) , the sum requested by Class Counsel for attorneys' fees, costs, and expenses ($840,000.00) is 29.9% or less of those amounts. Moreover, the following *Johnson* factors support the attorneys' fees, costs, and expenses request.

### 1.    <u>The Case Required Substantial Time and Labor</u>

Completing the case through settlement demanded considerable time and labor. Before and during the litigation of the instant action, involving a putative class/collective of 750 Settlement Class members, Class Counsel had to investigate the underlying merits of the claims, including the strength of Plaintiffs' "off-the-clock" claims as well as commission chargeback and state law claims, and whether the putative class and collective action members at multiple call centers were similarly situated. (ECF No. 95-2, App. pp. 102 - 104, ¶¶35 - 44 (Vaught First Decl.)).

Plaintiffs also had to defend their case against Defendants' Motion to Dismiss filed on June 16, 2014 alleging preemption by the Labor Management Relations Act ("LMRA") relative to the Collective Bargaining Agreement applicable to the Plaintiffs, Opt-in Plaintiffs and putative class members. (ECF No. 11; ECF Nos. 32-37; ECF No. 95-2, App. p. 103, ¶37). After extensive briefing, the Court found for Plaintiffs, denying that Motion to Dismiss in its entirety. (ECF Nos. 32-33; ECF No. 95-2, App. p. 103, ¶37; & ECF No. 43). LMRA preemption issues add

significant complexity to wage and hour litigation that is not otherwise present. (MFA App. p. 60, ¶ 18).

The parties exchanged data sufficient to calculate the damages of the Class Members in this case. (ECF No. 95-2, App. p. 103, ¶38). Thereafter, the parties engaged in two full-day mediations, which required significant preparation including communications with mediators and preparation of declarations for Plaintiffs and Class Members. (ECF No. 95-2, App. p. 103, ¶40; MFA App. p. 63, ¶27).

After Notice Packets were issued by CAA, Class Counsel engaged in numerous conversations and significant correspondence with Plaintiffs, opt-in Plaintiffs and Class Members regarding the settlement. That required substantial time. (MFA App. pp. 56 - 57, ¶¶5 – 10).

Each of the above-described efforts was essential to achieving the Settlement before the Court. (ECF No. 95-2, App. pp. 102 – 103, ¶¶35 – 40  & MFA App. pp. 56-67, ¶¶5-10). The time and resources expended by Class Counsel justify the attorneys' fees, costs, and expenses that are being requested.

### 2.  The Issues Involved Presented Novelty and Required Skilled Attorneys to Prosecute the Action

The second *Johnson* factor involves the novelty of the case. As fully described above, the case presented novel issues regarding whether or not Defendants' chargeback policy was precluded from consideration by this Court due to a collective bargaining agreement, and Defendants identified certain possible claims against Plaintiffs and Class Members. Thus, the issues in this case were more novel than the run-of-the-mill FLSA case involving only unpaid overtime wages. (*See generally*, ECF Nos. 11, 32, 33, 36 & 37 (Briefing relative to Defendants' Motion to Dismiss); ECF No. 95-1, App. p. 11, ¶II.S., p. 17, ¶II.RR., p. 18, ¶II.VV. & pp. 29-36,

¶IX. (Releases in Settlement Agreement for various classes including FLSA opt-in collective actions classes and Rule 23 state law opt-out classes); & MFA App. p. 60, ¶18).

It is also beyond dispute that the Defendants are well-funded companies who had access to excellent attorneys from one of the largest employment law firms in the nation. The case required attorneys trained in class-action law and procedure as well as the specialized issues presented here. Class Counsel are so trained and have practiced employment law for many years. (ECF 95-1, App. pp. 96-2, ¶¶4-33, pp. 107-130; & MFA App. p. 56, ¶4). The novelty of the claims in this case and complexity of the competing class mechanisms further support the attorneys' fees, costs, and expenses sought here.

### 3. Class Counsel Assumed Considerable Risk Due to the Contingency Relationship Between Counsel and Plaintiffs and Preclusion from Other Employment

In connection with the fourth and sixth *Johnson* factors, courts consider the risks to Class Counsel involved with prosecuting the action.

Class Counsel have prosecuted the action entirely on a contingent fee basis. (MFA App. pp. 59 – 61, ¶¶17 - 18). In prosecuting a complex action such as this one, Class Counsel assumed a significant risk of nonpayment, and time spent working on the case necessarily precluded other employment. (*Id.*). *See also, Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859-60 (E.D. La. 2007) ("Recognizing the contingent risk of nonpayment in [class action] cases, courts have found that class counsel ought to be compensated both for services rendered and for risk of loss or nonpayment assumed by carrying through with the case") (internal quotations and citations omitted). Moreover, public policy, specifically "ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims," supports Class Counsel's request. *Jenkins*, 300 F.R.D. at 309.

*Brief in Support of Motion for Final Approval - Page 18*

Accordingly, the fourth and sixth factors support the requested award.

### 4.  Class Counsel Achieved an Excellent Result

Class Counsel submit that the Court should respectfully find that the results in this case are excellent for the Class Members. First, the Class Members who submitted claims will receive compensation for their FLSA and respective state law claims in the amount of approximately $811,462.19. (MFA App. pp. 40, ¶15; & MFA App. pp. 57 – 58, ¶11). Furthermore, all Class Members will receive the benefit of the Released Possible Fraud Claims. (ECF No. 95-1, App. pp. 29-30, ¶IX.A.; & MFA App. pp. 58 - 59, ¶13). The Settlement Agreement also provides substantial monetary relief which has been overwhelmingly supported by the Class Members. (MFA App. pp. 39 - 40, ¶¶10 –15; & MFA App. pp. 57 – 58, ¶11). Thus the eighth *Johnson* factor supports the request.

### 5.  The Requested Attorneys' Fees, Costs, and Expenses are Lower than Fees Awarded in Similar Cases

The attorneys' fees, costs, and expenses sought by Class Counsel are "on the lower end" of fees requested as percentages of common funds. *See, e.g., Vela*, 276 F.3d at 681 ("the customary contingency fee in labor litigation is … 35 to 40 percent."); *Jenkins*, 300 F.R.D. at 310 (citing *Smith*, 216 F.R.D. at 368 for the proposition that 20% is the lower end of a normal fee award). Successful settlements for this type of action generally support fee awards of at least 33.3%. *See id.* (citing litany of cases). Whether the Court considers Class Counsel's attorneys' fees, costs, and expenses request at 29.9% or 20.5% of the total value of the Settlement, the attorneys' fees, costs, and expenses request of Class Counsel is presumptively reasonable. The twelfth *Johnson* factor does not support a decrease to Class Counsel's request.

### 6.  Remaining *Johnson* Factors Support the Request for Attorneys' Fees, Costs, and Expenses

Finally, the Court should respectfully find that the remaining *Johnson* factors support Class Counsel's attorneys' fees, costs, and expense request. (Specifically, Class Counsel are reputable and experienced attorneys, who spent, to date, approximately 2.5 years diligently prosecuting the claims of the Plaintiffs and who achieved an excellent result for them. (ECF 95-1, App. pp. 96-102, ¶¶4-33, pp. 107-130; & MFA App. p. 56, ¶4, pp. 59 - 60, ¶¶17 - 18).In sum, the Court should respectfully find no reason to diminish the attorneys' fees, costs, and expenses requested by Class Counsel due to the *Johnson* factors. At 29.9% or 20.5% of total value, depending on how the Court decides to measure the results achieved by Class Counsel, the request for attorneys' fees, costs, and expenses is reasonable and justified.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs request that this Court grant this Unopposed Motion for Final Approval of Collective and Class Action Settlement and Unopposed Motion for Attorneys' Fees, Costs, and Expenses.

Respectfully submitted,

By:     s/Allen R. Vaught
        Russell W. Budd
        TX Bar No. 03312400
        Allen R. Vaught
        TX Bar No. 24004966
        Melinda Arbuckle
        TX Bar No. 24080773
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas 75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        rbudd@baronbudd.com
        avaught@baronbudd.com
        marbuckl@baronbudd.com

ATTORNEYS FOR PLAINTIFFS